# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:05CV409

| | |
|---|---|
| ROSLYN K. REESE,<br>    Plaintiff,<br><br>vs.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br>    Defendant. | **MEMORANDUM AND ORDER** |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Motion for Summary Judgment" and "Memorandum in Support..." (Document No. 10), filed March 9, 2006 by Roslyn Reese; the Commissioner's "Motion for Summary Judgment" and "Memorandum in Support..." (Document Nos. 11 and 12), filed May 3, 2006; and "Plaintiff's Reply to Defendant's Motion for Summary Judgment" (Document 13), filed May 5, 2006. The parties have consented to magistrate jurisdiction under 28 U.S.C. § 636 (c), and these motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned finds that the Commissioner's decision to deny Plaintiff Social Security disability benefits is supported by substantial evidence. Accordingly, the undersigned will <u>deny</u> Ms. Reese's motion for summary judgment, <u>grant</u> the Commissioner's motion for summary judgment, and <u>affirm</u> the Commissioner's decision.

## I. PROCEDURAL HISTORY

On December 19, 2002, Ms. Reese applied for disability insurance benefits, alleging she became disabled on March 31, 1997. (R. 112-114.) Ms. Reese's claim was denied initially and then again on reconsideration.

Ms. Reese requested a hearing, which was held on May 24, 2005. (R. 36-95.) On June 24, 2005, the Administrative Law Judge ("ALJ") issued an opinion denying Ms. Reese's claim. (R. 11-26.) Subsequently, Ms. Reese filed a Request for Review of Hearing Decision. The Appeals Council denied Ms. Reese's request for review, making the hearing decision the final decision of the Commissioner. (R. 5-7.)

Ms. Reese filed this action on September 22, 2005, and the parties' cross-motions for summary judgment are ripe for this Court's consideration.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405 (g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), the Fourth Circuit defined "substantial evidence" as

> being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Smith, 782 F.2d at 1179 (quoting Perales, 402 U.S. at 401).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner - so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in

the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case *de novo* when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion.") Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether Ms. Reese became "disabled" as that term is defined for Social Security purposes at any time prior to December 31, 2002, her date last insured.[1] The ALJ concluded that Ms. Reese had "severe" disorders involving the immune mechanism, but that she did not have an impairment or combination of impairments which met or medically equaled the level of severity listed in Appendix 1, Subpart P, Regulations No. 4. The ALJ further found that Ms. Reese retains the residual functional capacity to perform "sedentary" or "light" work with certain limitations, and that based upon her residual functional capacity, Ms. Reese could perform work which exists in significant numbers in the national economy. Accordingly, the ALJ concluded that Ms. Reese was not disabled.

Ms. Reese contends on appeal that the ALJ erred in his evaluation of her residual functional

---

[1] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:
> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ....

Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

3

capacity. Specifically, Ms. Reese contends that (1) the ALJ erred by failing to assign greater weight to the opinions of her treating physicians; and (2) that the ALJ erred by finding her not credible with respect to her subjective complaints. The undersigned concludes, however, that substantial evidence supports the ALJ's decision and that the ALJ applied the correct legal standard in this case.

### Residual Functional Capacity

The Social Security Regulations define "residual functional capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b). The residual functional capacity assessment is based on all the relevant evidence, including observations by treating or examining physicians. 20 C.F.R. § 404.1545(a).

### Opinions of Treating Physicians

In challenging the ALJ's assessment of her residual functional capacity, Ms. Reese contends that the ALJ erred by failing to give controlling weight to the opinion of Dr. Joseph Jemsek, her treating physician. The Fourth Circuit has established that a treating physician's opinion need not be afforded controlling weight. *Hunter*, 993 F.2d at 35. Under the traditional application of the treating physician's rule, a court is generally required to give a treating physician's opinion greater weight, and may grant that opinion controlling weight. *Coffman v. Bowen,* 829 F.2d 514, 517 (1987). Furthermore, the court may only disregard such testimony if there is persuasive contrary evidence. *Coffman,* 829 F.2d at 517. Under regulations adopted in 1991, a treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

4

inconsistent with other substantial evidence in the record. *See* 20 C.F.R. §§ 404.1527(d)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).

Thus, in contrast to the common law rule where treating sources' opinions were generally given controlling weight at the apparent discretion of the ALJ, regulations adopted in 1991 grant treating physicians' opinions controlling weight "only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." *Ward v. Chater*, 924 F.Supp. 53, 55 (W.D.Va. 1996); *see also Johnson v. Barnhart*, No. 305CV00030, 2006 WL 840315 (W.D.Va. March 21, 2006). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Mastro*, 270 F.2d at 178 (citation omitted).

Additionally, the Code of Federal Regulations provides that Plaintiff's residual functional capacity and the ultimate determination of the disability are to be wholly resolved by the ALJ. See 20 C.F.R. §§ 404.1527(e)(1), (e)(2); 404.1546(c). An opinion regarding a matter expressly reserved to the Commissioner cannot be considered a medical opinion under the regulations because it is an assessment that is dispositive of the entire determination. 20 C.F.R. § 404.1527(e).

### Dr. Jemsek

In a written statement dated May 27, 2005, Dr. Jemsek concluded that Ms. Reese had not been able to do sedentary or light work from April 18, 2002, through December 31, 2003 (R. 425-26). The ALJ gave little weight to this opinion. Ms. Reese argues that the ALJ erred by not assigning greater weight to Dr. Jemsek's conclusion. She further argues that the medical records of her office visits with Dr. Jemsek support his findings. The Court disagrees with Ms. Reese.

5

The ALJ expressly considered Dr. Jemsek's treatment records, and the statement containing his opinion regarding her inability to work. The ALJ assigned "little weight" to Dr. Jemsek's opinion because it lacked clinical and diagnostic support. In his Decision, the ALJ stated "it is clear from the record that the doctor based his opinion on the claimant's subjective complaints rather than objective findings. No specific functional testing results accompanied the doctor's notes and it was not until March 2003 that Dr. Jemsek noted that the claimant tested positive for Lyme disease..." (R.19).

The Court has reviewed the treatment records and the medical statement signed by Dr. Jemsek. (R. 341-352, 425-26). The Court finds that the ALJ did not err in affording Dr. Jemsek's opinion little weight in the absence of evidence of medically acceptable clinical and laboratory diagnostic techniques supporting the opinion. To the contrary, the ALJ considered the report as required by Social Security Ruling (SSR) 96-5p. Moreover, because Ms. Reese's residual functional capacity and disability determination must be resolved by the ALJ, the ALJ was not required to construe Dr. Jemsek's finding as a medical opinion under 20 C.F.R. § 404.1527(e).

**Subjective Complaints of Non-Exertional Symptoms**

The ALJ concluded that Ms. Reese's complaints regarding her pain and fatigue were not credible. Ms. Reese objects to the ALJ's assessment of her credibility, and contends the ALJ could have found her disabled based upon her subjective complaints of pain and physical discomfort alone. The Court disagrees and finds that substantial evidence supports the ALJ's resolution of conflicts in the evidence.

The determination of whether a person is disabled by non-exertional symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical

6

impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996) (citing 20 C.F.R. § 4916.929(b), § 404.1529(b); 42 U.S.C. § 423(d)(5)(A)). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain [or other symptoms], and the extent to which it affects his ability to work." Craig, 76 F.3d at 595 (citing 20 C.F.R. § 416.929(c)(1), § 404.1529(c)(1)). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory finding; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Ms. Reeses's fibromyalgia, lyme disease, and other disorders, which could be expected to produce some of the pain claimed by her, and the ALJ – by concluding that Ms. Reese suffered from severe impairments – implicitly found that Ms. Reese could satisfy the first prong of the test articulated in Craig.

The ALJ next evaluated the "intensity and persistence" of her pain and other symptoms and evaluated the extent to which they affected her ability to work. Craig, 76 F.3d at 595 (citations omitted). The record reflects that the ALJ considered all of the medical evidence and testimony in arriving at his conclusion that Ms. Reese's allegations are not credible.

At the hearing, Ms. Reese dated the starting point for her medical problems to be the mid-1990s. She detailed for the ALJ constant and extreme pain involving most activities and body parts.

7

Ms. Reese testified that her condition progressed over the years, resulting in her cessation of outside employment in the summer of 1997. She had been working for commissions at Boyle's furniture store. Thereafter, she operated out of her home until early 1999. During that year-and-a-half, Ms. Reese worked on interior design with three individuals, one prior customer and two friends. She would go shopping for them, assist them in acquiring furniture, and evaluate their home or house plan. Ms. Reese testified, in addition to the shopping and design activities, that she injured herself in an incident at her home in her capacity as a general contractor when she fell through the floor joists. Medical records date the later accident around June 2001. Ms. Reese also testified that in the years 2000 and 2001, it was too painful for her to cook, do the dishes, iron, sweep, mop, vacuum, and dress herself, among other things. Ms. Reese's husband corroborated much of her testimony.

The ALJ concluded that Ms. Reese's testimony regarding the nature, extent, and duration of her pain was inconsistent with the ability to operate an interior design business out of her home and to work on her own home construction site. As a result, the ALJ concluded that Ms. Reese retained significant residual functional abilities during the period in question.

As the Fourth Circuit noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in medical evidence." Seacrist, 538 F.2d at 1056-57. Moreover, it is the decision of the Commissioner to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King 599 F.2d at 599; Seacrist 538 F.2d at 1056-57. The Court concludes the ALJ properly considered and evaluated the evidence, and resolved the inconsistencies therein.

### Agency Medical Consultants

As stated above, the residual functional capacity assessment is based on all the relevant evidence. 20 C.F.R. § 404.1545(a). In determining Ms. Reese's residual functional capacity, in

addition to the ALJ's evaluation of her treating physician's opinions and his assessment of Ms. Reese's complaints, the ALJ also properly considered the Agency medical consultants' opinions. 20 C.F.R § 404.1527(f)(2). In January 2003, Dr. B.B. Blackmon, an Agency medical consultant, completed a Physical Residual Functional Capacity Assessment and determined that Ms. Reese was able to occasionally lift fifty pounds and frequently lift twenty-five pounds; that she could sit, stand, or walk for about six hours in an eight-hour workday; and that she had an unlimited ability to push and/or pull. He also determined that she had no postural, manipulative, visual, communicative, or environmental limitations. (R. 179-186.)

In May 2003, Dr. Joseph Dykes, another Agency medical consultant, completed another Physical Capacity Assessment. Dr. Dykes determined that Ms. Reese was able to occasionally lift fifty pounds and frequently lift twenty-five pounds; that she could sit, stand, and/or walk for about six hours in an eight-hour day; and that she had an unlimited ability to push and/or pull. Dr. Dykes also determined that Ms. Reese had no postural, manipulative, visual, or communicative limitations, but that she should avoid concentrated exposure to hazards, such as machinery and heights. (R. 171-178.)

Taking this evidence into account, the ALJ found Ms. Reese is able to perform "'sedentary' or 'light' work with no frequent or repetitive bending, stooping, squatting, climbing, or balancing with no exposure to heights or hazards and due to chronic pain would be unable to perform jobs requiring sustained concentration." (R. 19.) Based on all the foregoing, the undersigned concludes that substantial evidence supports the ALJ's residual functional capacity determination.

## Job Availability

Ms. Reese does not appeal the ALJ's determination that there are a significant number of jobs

9

in the national economy that an individual with her age, educational background, work experience and residual functional capacity could perform. Notwithstanding, the Court concludes that substantial evidence supports the ALJ's determination. The testifying vocational expert offered evidence of specific jobs that Ms. Reese could perform, such as working as a library aide, and the number of such jobs which exist in North Carolina and in the national economy. (R. 85-90.) Based on the foregoing, the undersigned concludes that substantial evidence supports the ALJ's determination that Ms. Reese could perform work which exists in significant numbers in the national economy.

Because substantial evidence supports both the finding that Ms. Reese has a residual functional capacity for sedentary or light work with no frequent repetitive bending, stooping, squatting, climbing, or balancing with no exposure to heights or hazards and due to chronic pain would be unable to perform jobs requiring sustained concentration, and that Ms. Reese could perform work which exists in significant numbers in the North Carolina and national economy, Ms. Reese is not disabled for Social Security purposes.

## IV. ORDER

Accordingly, **IT IS HEREBY ORDERED THAT** "Plaintiff's Motion for Summary Judgment" (Document No. 10) is **DENIED**; the Commissioner's "Motion for Summary Judgment" (Document No. 11) is **GRANTED**; and the Commissioner's decision is **AFFIRMED**.

Signed: July 12, 2006

_____
David C. Keesler
United States Magistrate Judge